Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, October 30, 2006 4:31:55 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ESTATE OF VIRGIL B. LAROSA, | ) | Case No. 03-4115 |
| JOAN LAROSA | ) | |
| | ) | |
|            Debtors. | ) | |
| ──────────────────────────── | ) | |
| | ) | |
| JOSEPH LAROSA, and | ) | |
| DOMNICK LAROSA | ) | |
| | ) | |
|            Plaintiffs, | ) | |
| | ) | |
|     v. | ) | Adv. Proc. No. 03-219 |
| | ) | Adv. Proc. No. 03-220 |
| ESTATE OF VIRGIL B. LAROSA, and | ) | |
| JOAN LAROSA | ) | |
| | ) | |
|            Defendants. | ) | |
| ──────────────────────────── | ) | |
| | ) | |
| JOSEPH LAROSA, and | ) | |
| DOMNICK LAROSA | ) | |
| | ) | |
|            Plaintiffs / Counter | ) | |
|            Defendants, | ) | |
| | ) | |
|     v. | ) | Adv. Proc No. 04-53 |
| | ) | |
| ESTATE OF VIRGIL B. LAROSA, and | ) | |
| JOAN LAROSA | ) | |
| | ) | |
|            Defendants / Counter | ) | |
|            Claimants. | ) | |
| ──────────────────────────── | ) | |

1

|  |  |
|---|---|
| JOSEPH LAROSA, and <br> DOMNICK LAROSA <br><br> Plaintiffs, <br><br> v. <br><br> ESTATE OF VIRGIL B. LAROSA, <br> JOAN LAROSA, and <br> CHEYENNE COAL SALES, INC. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Adv. Proc. No. 05-199 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

The Estate of Virgil B. LaRosa[1] (the "Debtor") seeks to stay further activities in the Debtor's Chapter 11 proceeding, and the four related adversary proceedings, until an arbitration panel in a case styled *Regal Coal v. LaRosa* renders a decision. Only three claims exist against the Debtor's estate, two of which are filed by Joseph and Dominick LaRosa ("JDL"), and the third of which is filed an amount of $0. All four of the above-captioned adversary proceedings against the Debtor have been initiated by JDL. The Debtor argues that, as a result of the arbitration, the Debtor may be entitled to offset as much as $2,900,000 of JDL's total claim of $4,507,493. JDL opposes any stay.

The court held a telephonic hearing on the Debtor's motion on August 22, 2006, in Wheeling, West Virginia, at which time the court took the matter under advisement. For the reasons stated herein the court will deny the motion.

## I. BACKGROUND

On April 14, 1980, the Debtor formed Cheyenne Sales Company, Inc. ("Cheyenne"), a West Virginia Corporation. The Debtor owns 100% of Cheyenne's stock. Cheyenne operates a coal tipple and wash plant in Upshur County, West Virginia (the "Upshur Land"). The Upshur Land belongs to the

---

[1] Virgil B. LaRosa commenced this Chapter 11 case on November 19, 2003. On June 17, 2006, Virgil B. LaRosa passed away and his spouse, Joan LaRosa, assumed the role of Debtor in Possession. The case is continuing pursuant to Fed. R. Bankr. P. 1016.

2

children of the Debtor. JDL alleges that Cheyenne never executed a written lease for use of the Upshur Land until 2003 – within one-year before the Debtor's bankruptcy filing – whereby Cheyenne was required to reimburse the Debtor's children for any environmental liabilities caused by Cheyenne. Also, at some point, Cheyenne executed a loan agreement with Huntington Bank for a $950,000 line of credit, which was guaranteed by the Debtor, and for which the Debtor pledged certain securities, including Van Kamp Securities, certificates of deposit, and shares of stock in Huntington Bank.

On August 8, 1982, JDL loaned the Debtor $800,000. According to JDL, the loan agreement relates that the Debtor is the trustee of the Upshur Land, the Debtor operates Cheyenne as trustee for certain beneficiaries, and that the Debtor has the power to deal in any and all matters relative to the Uphsur Land. The Debtor allegedly agreed to grant JDL full and complete management and control over the operations on the property, the wash plant, and any other business conducted on the property. JDL's management rights were to terminate in 2001, but the Debtor agreed to extend those rights – most recently as June 2003.

The Debtor did not repay the debt owed to JDL. On October 25, 1994, JDL obtained a judgment from the United States District Court for the District of Maryland declaring that the Debtor owed JDL about $2,800,000 on the loan. Nearly eight years later, on September 11, 2002, the Maryland judgment was registered in the Federal District Court for the Northern District of West Virginia.

Once registered, JDL sought to execute on the judgment by serving a Suggestion of Personal Property on a multitude of parties, including Huntington Bank on June 18, 2003. The Debtor opposed the Suggestions on the grounds that the underlying judgment was invalid. Within a few months after serving the Suggestions on Huntington Bank, and within months before the Debtor's bankruptcy filing, Huntington Bank loaned Cheyenne an additional $700,000. JDL asserts, however, that Cheyenne did not use those funds; rather it transferred the funds to an account controlled by the Debtor's son David.

Also seeking to collect the judgment from the Debtor's real property, JDL filed a complaint in the Circuit Court of Harrison County, West Virginia. The Debtor also opposed that complaint, and the Debtor filed counterclaims against JDL seeking damages related to matters that arose after entry of the October 25, 1994 Maryland judgment, including misrepresentation, breach of implied contract and covenant of fair dealing, and unjust enrichment.

3

Before either the West Virginia Federal District Court, or the West Virginia State Court could address the merits of allegations associated with those proceedings, the Debtor filed this Chapter 11 bankruptcy on November 19, 2003. On December 3, 2003, the Debtor removed both the Federal District Court action and the State Court action to the bankruptcy court. The Harrison County Action is designated as Adversary Proceeding No. 03-219. The Federal District Court action is designated as Adversary Proceeding No. 03-220. These two adversary proceedings have been administratively consolidated by the court.

On April 5, 2004, JDL filed an amended proof of claim in the Debtor's bankruptcy proceeding for $4,507,493. The Debtor objected to that claim asserting that the amount owed was less than what JDL had stated because of certain, unspecified offsets.

On April 5, 2004, JDL filed a complaint against the Debtor asserting that the loan from JDL to the Debtor is excepted from the Debtor's discharge (if one should be granted) on the basis that the loan was obtained by false pretenses, false representations, or actual fraud pursuant to 11 U.S.C. § 523(a)(2). That action is designated as Adversary Proceeding No. 04-53.

On November 14, 2005, JDL filed an adversary complaint against the Debtor and Cheyenne to recover alleged preferential and fraudulent transfers. The alleged basis for the preference action is that the Debtor's execution of the lease between Cheyenne and the Debtor's children created a liability to the West Virginia Department of Environmental Protection for the benefit of the Debtor's children. The alleged basis for the fraudulent transfer action is that the transfer of funds from Huntington Bank to Cheyenne caused a diminution in value to the Debtor's estate at a time when the Debtor was insolvent. That Adversary Proceedings is designated as No. 05-199.

The Debtor's son David, and entities that he is affiliated with, namely Regal Coal, Inc. ("Regal"), and Cherokee Processing, Inc., are involved in an arbitration proceeding with Dominick LaRosa and entities with which Dominick is affiliated. The arbitration also involves third party plaintiffs, namely Energy Marketing Co., Inc., Credible, Inc., and Research Fuel, Inc. (Research), as well as an unrelated intervenor and third party defendant, Courtney F. Foos Coal Co., Inc. ("Foos"). According to JDL, the following allegations have an impact on the Debtor's Chapter 11 proceeding: (1) Regal agreed to sell coal to Research at a specified price; (2) Research, in a separate agreement with Foos, contracted to resell the

4

coal to Foos at a specified price; and (3) Dominick agreed that a portion of the profit that Research realized on its coal sales to an unrelated third party (about $3.00 per ton), was to be allocated to the repayment of the Debtor's indebtedness to JDL. The Debtor has alleged in this bankruptcy that any such portion must be offset against JDL's claim against the estate.

### III. DISCUSSION

The Debtor argues that this bankruptcy case, including all of the above-mentioned adversary proceedings, should be stayed pending the outcome of the binding arbitration in the case styled as *Regal Coal v. LaRosa*. The Debtor contends that the outcome of the arbitration proceeding will have a significant impact on the amount of outstanding debt in the bankruptcy action and related adversary proceedings on the grounds that monetary awards may be made for the benefit of the Debtor, which may be credited against the debt that the Debtor owes JDL. The Debtor anticipates that the offset may be as great as $2,900,000.[2]

JDL opposes the stay of the above-stated bankruptcy proceedings on the basis that neither the Debtor nor Joseph LaRosa are parties to the arbitration, no basis exists to stay all proceedings in the Debtor's Chapter 11 case, and JDL's claim is far in excess of any potential offset that the Debtor might be able to assert against JDL.

A bankruptcy court has a "virtually unflagging obligation" to exercise the jurisdiction given to it by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."). Nevertheless, a bankruptcy court may decline to exercise jurisdiction, or stay a proceeding, under proper circumstances.[3] *Quackenbush*, 517 U.S. at 716 ("Federal courts may decline to exercise their jurisdiction,

---

[2] The Debtor also asserts that some additional time is needed to reevaluate the litigation associated with this case in light of Virgil B. LaRosa's death inasmuch as his death may impact the manner in which evidence must be presented and impact judicial economy. The court believes, however, that these goals can be accomplished in the absence of any stay.

[3] Abstention of a bankruptcy proceeding is proper pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), "where the following three requirements are satisfied: (1) there are ongoing state

5

in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest.").

For example, a bankruptcy court may stay a proceeding when the basis is one of wise judicial administration. *E.g.*, *Colorado River*, 424 U.S. at 817 ("These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'.") (citation omitted). Given the obligation of the federal courts to exercise the jurisdiction given them, however, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent . . . proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818. A determination of whether or not to stay litigation, or to abstain from hearing it, under *Colorado River* is to be made by "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). Factors that a court may consider in making that determination include, but are not limited to, "the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums." *Colorado River*, 424 U.S. at 818; *see also DVI Bus. Credit Corp. v. Crowder*, 193 F. Supp. 2d 1002, 1008 (S.D. Tex. 2002) (considering six factors under *Colorado River*: (1) assumption by either court over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law provides the rule of decision; and (6) whether the state court proceedings are inadequate to protect the federal plaintiff's rights).

---

proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3rd Cir. 2005). Similarly, abstention is proper under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), "when questions of state law in which the state has expressed a desire to establish a coherent policy on a matter of substantial public concern are raised." *NYLife Distribs. v. The Adherence Group, Inc.*, 72 F.3d 371, 376 n.8 (3rd Cir. 1995).

Here, there is no argument that the bankruptcy court should abstain from hearing any of the adversary proceedings, or claims objection proceedings arising out of the Debtor's Chapter 11 bankruptcy case.

6

Based on the circumstances of this case, a stay of the Debtor's Chapter 11 proceeding and related adversaries while the Debtor's entitlement to an offset is litigated in arbitration is not appropriate for the following reasons: (1) the arbitration proceeding involves non-debtor parties; (2) assuming that the arbitration proceeding results favorably to the Debtor's son, and that as a result the Debtor is entitled to offset JDL's claim against him to the extent of $2,900,000, that offset would be insufficient to eliminate JDL's claim, which JDL asserts to be at least $4,507,493; (3) no indication exists that the claims asserted by the parties in the arbitration proceeding will be adversely impacted should this court exercise its jurisdiction, and there is no indication that continuing proceedings in this court would interrupt another court's consideration of novel issues of state law, or call into question federal-state relations; (4) the amount of duplicate litigation that the parties might be called on to conduct only relates to the offset agreement entered between David and Dominick and/or their related entities – no other aspect of estate administration will be affected; (5) the Debtor's case has not proceeded to confirmation, and it is likely that the arbitration proceeding will conclude before the time period allotted to the claims objection process will terminate; (6) this court is the only forum that can administer the Debtor's bankruptcy case, and the most convenient and/or the only forum in which to litigate the related adversary proceedings; and (7) without a clear justification for imposing a stay, this court is obligated to exercise the jurisdiction given to it by Congress.

### III. CONCLUSION

For the above-stated reasons, the Debtor's motion for a stay of his Chapter 11 proceeding will be denied. A separate order will be entered.

7